And we will move to our second case this morning, Schroeder v. Progressive. Mr. Kashtan. May it please the court, my name is Jeff Kashtan of King & Spaulding. I represent the Progressive Petitioners Appellants. I'd like to reserve three minutes for rebuttal. That's fine. In this breach of contract lawsuit, plaintiff alleges that she was paid less than she was owed under her automobile insurance policies for her total loss vehicles. The district court abused its discretion in certifying the class. While we make many arguments in our briefs, I intend to focus on two points in oral arguments. First, the policy at issue requires Progressive to pay insureds the actual cash value of their total loss vehicles. In evaluating predominance, the district court abused its discretion by focusing on plaintiff's challenge to an isolated intermediate step in Progressive's process for estimating actual cash value. The proper focus in this breach of contract action is not on any alleged flaws in Progressive's methodology, but whether at the end of the day the insured was paid actual cash value for her total loss vehicle, as the policy required. Plaintiff and each member of the class cannot prevail on their breach of contract claims unless they prove they were not paid actual cash value for their vehicles. So this is the same conceptual problem that was at work in the Cartman case? This is on points with Cartman, Your Honor, and the same mistakes and flaws that manifested themselves in Cartman are here today. In fact, the second point we wanted to make was that making the determination of whether there was payment of actual cash value is highly individualized. The district court erred because it focused instead on whether there was a methodological flaw and not on what were people paid and how was there going to be proof of the payment. Just like in Cartman, as this court clarified in Cartman, I'm sorry, are you essentially arguing, Mr. Kashtan, that even if the PSA deduction is proven to be invalid, and the actual cash value under the Mitchell method would probably be calculated without that deduction, that a progressive can defeat predominance by simply choosing to resort to multiple other methods of calculating actual cash value and requiring many trials for each individual? And that's pretty yes or no, so that I can explain my next question. The answer is yes, Judge Robner, and I can explain why, if you'd like. Well, I will ask you to do that, but what I have been wondering is this. Why isn't the predominance requirement met by showing that under the method Progressive has actually chosen, the Mitchell method, all class members can gain relief by simply eliminating the PSA deduction? The reason, Your Honor, is that the policy at issue requires Progressive to pay actual cash value and permits Progressive to use any methodology it chooses as long as it meets that contractual obligation. Here, the plaintiffs think one part of the methodology Progressive is using is flawed. We can test that. They can try to prove it, but in the end, they have to show that they weren't paid the amount the policy requires them to have been paid. Even if they were to show, for example, that the projected sold adjustment is flawed, it still may be the case that they were paid actual cash value. The testimony in the record from all sources, including the plaintiffs, is that actual cash value can be fairly calculated using a variety of methodologies. They don't all come up with the same dollar amount. It's sort of a range, and the question is, did Progressive pay actual cash value or not? Let me give you a hypothetical that maybe puts a fine point on it. Assume that Progressive adopted a policy that said, from now on, what we're going to do is we're going to use the Mitchell methodology with the projected sold adjustment to calculate the value of vehicles, and then we're going to pay everyone ten times that amount to settle their claims. Somebody has a car accident, a Toyota Camry gets damaged, a total loss, and the Mitchell methodology spits out a $5,000 valuation, and Progressive pays that person $50,000. That methodology would have used the PSA, but nobody would claim that that person has a breach of contract claim because they received well more than the actual cash value of the vehicle. So the question for the jury in this case, because it's a breach of contract case, is, was the person paid what they're due under the policy? And this is exactly the Cartman case. In the Cartman case, this court addressed State Farm's policy approach for hail damage, and the plaintiffs were alleging that the methodology being used was flawed, was not uniform, and the court spent some time to detail, to clarify the claims. First of all, the court of the Cartman made clear, and this is at page 889, that the district court correctly denied the Rule 23b3 certification, the damages certification, because of the particular facts in the case, and the court explained that the essence of an insurance policy is a promise by the insurer to compensate the insured for the loss of something of value that is covered under the policy. This court went on to explain that, quote, if a given policyholder was fully compensated for the damage to her property, then the insurer will have satisfied its contractual obligation regardless of the standard used to assess the damage. In this case, the question is not whether the methodology Progressive used had an intermediate flaw. The question is, in the end, were they paid actual cash value? Now, the plaintiffs... The policy also says that actual cash value has to be determined by market value, condition of the car, and the age of the car. Is the PSA deduction consistent with that, or is there a viable argument that that imposes a duty about the methodology? I think those are two different questions, Your Honor. I agree. I don't think that that imposes any kind of methodological duty. I don't think saying market value is any more constructive for a formula or a methodology than actual cash value. I do think that there's a dispute about whether the projected sold adjustment reflects market value, and that's an issue the jury will have to decide. But in the end, the question is, were these insureds paid actual cash value or not? The plaintiffs think that they can kind of overcome this by simply saying, well, our issue isn't going to... First of all, they recognize in their briefs, throughout their briefs, as did the district court, that if the question is figuring out the actual cash value, it's highly individualized. The court below called it problematic, but then tried to avoid it by simply focusing on the methodological issue. The plaintiffs here, what they argue is, we can get around the individualized nature because we are only... We, the plaintiffs, are only going to put on evidence of the Mitchell valuation minus the PSA. That's the only evidence we're going to put on. Now, this court explained in gross motels that, in fact, when you're looking at the issue of predominance, you have to take into account the due process rights of defendants to actually put on a defense. And you have to take into account, what will that defense show? So we get to put on a defense and we get to say, as we did in the court below, number one, this methodology you're proposing, the Mitchell valuation minus PSA, that's not something Progressive has ever endorsed. There are flaws with it. There's an affidavit in the record from Mr. Phil Kroll that explains the flaws. A jury could reject that methodology as showing actual cash value. But in addition, there are other ways to prove actual cash value, such as the NADA guide. And that's going to be evidence that a jury could fairly consider in evaluating the question, for each insured, were they paid actual cash value? Because it turns out this is art as much as science. And the amount that Progressive pays is not to the dollar, the agreed actual cash value. It falls within a range of actual cash value. And it may be, even if you take the projected sold adjustment out, Progressive has still paid actual cash value. For example, there in the record is a report from Dr. Walker. You can find it at Appendix 242, where he took a look at the sample the plaintiffs were using, which was only 150 claims. Thirty-five percent of the time, the work center total loss value was greater than the NADA value, meaning a jury could conclude that in those 35 percent of the time, Progressive was paying more than actual cash value in settling the claim. Would that just be part of the definition of the class, though? That maybe they wouldn't fall within the class in the first place? Well, I don't think that's correct, Your Honor, the way they've defined the class. But if what you're saying is all we have to do is evaluate individually every single class member's claim before we decide who's in the class, I think you have a huge predominance issue and probably an ascertainability issue as well. Mr. Cashion, I'm going to take you way, way, way back first for a moment, please, because the standard of review, okay? The standard of review, to my mind, may very well be ultimately dispositive. And, of course, we review a district court's grant of class certification only for abuse of discretion, reversing if no reasonable person could agree with the court's determination. And that is a really onerous standard. And my thought coming in, but it is certainly not dispositive, is that reasonable persons could differ as to whether the requirements were met for class certification. But certainly some could agree with the reasoning of the court here. And, in fact, a number of courts have reached the same conclusions as the court did in this case. And you've just got to help me with that, simplistic as it may sound. Your Honor, yes. What I would say to you is that a misapplication of the law is always an abuse of discretion. And that's what we're arguing here. We're arguing here that the district court erred, just like the district court in Cartman, which this court reversed on class certification, erred by failing to properly identify the elements of the breach of contract claim at issue and then failing to rigorously analyze commonality and predominance based on those elements of that claim. That's the error this court made. It is true that there are other district courts. We have about 40 of these cases, all right? There are nine or ten that have certified classes, three or four that have not. Three weeks ago I was at the Third Circuit arguing a 23-F petition on one of the cases that certified the class that this court relied on, the Drummond case. We'll also be arguing in the Fourth Circuit for a 23-F as well. So just because some district courts have made errors and this court picked up on it doesn't mean that there's a weight of authority. In fact, this court, the Third Circuit in the Lewis case, the Fifth Circuit, the Sixth Circuit, the Eighth Circuit, and the Ninth Circuit all have issued decisions suggesting that this outcome is wrong. The weight of appellate authority goes against the court here below. But the reason why it's an abuse of discretion, Your Honor, to answer your question directly, is because it was a misapplication of the law. That's the problem here, and that is always an abuse of discretion, and we think we're on all fours with the Cartman case. Mr. Kestin, I know the common question has been a little bit of a moving target throughout the litigation. It seems like one of the plaintiff's big complaints about the PSA is that certain records were dropped where the list price was less than the actual sales price. If that were the common question alone, is that capable of class-wide determination? I would like to save my time for rebuttal, but I'll answer your question if I may, Your Honor. The answer is no, because that, again, goes to a challenge on the methodological flaws. We disagree with them on that, and we'll take them on that proof. But the answer to that question doesn't resolve the breach of contract case for anyone. Even if you assume that the PSA shouldn't be applied, it doesn't tell you whether somebody received actual cash value or not even when the PSA was applied. As I mentioned, 35% of the time, even with the PSA being applied, the amount progressive paid was more than they would have received if we had used the NEDA guide as another alternative. I'll reserve the rest of my time. Thank you, Your Honor. Thank you. Mr. Phillips. Thank you, Your Honor, and may it please the Court. My name is Jacob Phillips. I represent the plaintiff and the certified class in this action. This case is very simple. It's about whether Progressive breached its contract by applying a projected sold adjustment that was based on artificial, manipulated data where Progressive would take a bunch of data, and any time that a vehicle sold for less price or more, they would toss it out, and on the remaining data, they then decided that that was the entire market, and so they applied what they call a projected sold adjustment. This appeal is about whether the district court abused its discretion in finding that such claim was subject to class treatment. As we've already discussed, as Mr. Cashman discussed, an abuse of discretion only occurs if a district court makes a decision with which no reasonable jurist could agree. Well, mistakes of law are always an abuse of discretion. That is correct, but as Mr. Cashman said, they're not claiming that the district court made a mistake of law. His claim is that the way that, in other words, that the district court didn't apply the right standard or didn't cite Dukes or whatever. They're saying that the way that it was applied to the facts in this case. What about Cartman? I'm sorry? The district court didn't address the Cartman problem. The district court cited Cartman and correctly distinguished it for this reason. Cartman was not about actual cash value, right? Cartman was real property, and it was about repair costs. Understandably, State Farm didn't have something of uniformity. No, I think what the district court said was that Cartman deals with injunctive relief only and isn't applicable here. That is correct. As to the 23b2, and that is a distinguishing factor, is that the issue facing this court in Cartman was under 23b2 and injunctive relief. We aren't claiming, unlike in Cartman, they were trying to have the court say, your contract says that you're going to pay to repair the property. We are going to, the plaintiff was asking the court to say, we're going to impose an extra contractual standard where you have to do it all the same way. It doesn't matter what it is. You just have to pick a uniform standard. So start from scratch, start over, pick a uniform standard, not an ad hoc standard, and do it all over again. That's what the plaintiff wanted. That's not what we're seeking here, right? Progressive chose the way that they calculate actual cash value, and we're fine with it. We're using Mitchell as our evidence, but for the PSA, right? So unlike in Cartman, where even if the plaintiff had gotten what they wanted, then we would have just been back at step one, right? State Farm would have had to have gone back out and reassessed the repair cost for every single one of those properties, starting from scratch. That's not certifiable, right? For the same reason that Lehrer wasn't certifiable, for the same reason that Curtis and Sampson, any time that you are asking an insurance company to disregard what came before and go reassess every single one of the properties, well, of course that's individualized. But that's not what we have here, right? That's not what we had in JAMA in the Ninth Circuit, which is why the Ninth Circuit found that to be subject to class treatment. We're using—Progressive already assessed the vehicles, and we agree with them. We're in agreement on every part of their vehicle assessment except for the sole question about the PSA. Was the PSA actually determined by market value, or was it instead determined by an artificial market that Progressive essentially invented? That is a common question. Mr. Cashman is correct. That's a question that the jury will have to answer, and the jury's answer is going to be commonly applicable to all class members. The question for commonality is whether absent class members, were they to bring an individual case, could they rely on the same evidence that the plaintiff has offered? This is a problem of predominance, not commonality. I'm sorry, Your Honor? This is a predominance problem, not a commonality problem. The PSA question may be common to the extent that it's part of your claim, but the question is whether individual liability questions, whether actual cash value was paid, predominate over that common issue. Well, the individual issues that they've raised— And recall that these are liability questions, not damages questions. Correct. So the individual issues that—the individual defenses that they've said that they want to raise, right, that Mr. Cashman talked about, one was NADA. NADA is— I'm talking about what you have to prove. Let's set aside the individual defenses that Progressive wants to raise here and that component of its argument against class certification. Your case for liability requires you to prove that every member of the class didn't get paid actual cash value. And those questions are highly individualized based on the circumstances of the accident, the condition of the car, all of the other inputs into claims adjustment. Right, but Progressive already did that, and we have that evidence, and we're going to offer that as evidence of actual cash value. So let's say that this wasn't a class action. The named plaintiff is bringing an individual case for breach of contract, and they go to a jury, and they say, Here's the initial report. We agree with it. They assess the condition of the vehicle. They assess the mileage. They assess all of the individual components. Progressive did. It's their own evidence. We agree with it, but there's this problem with the PSA. And then she were to offer the expert testimony that we've offered here, showing that market value is that vehicles typically sell for less price and all of that, all the evidence that we're presenting here. The question is, would she have made a prima facie case in an individual case by presenting that evidence? We would submit the answer is clearly yes. Every judge that's looked at this in summary judgment has agreed that the prima facie case has been made. So if that's true, if a jury could look at the initial report as evidence of the vehicle condition and all of that, Progressive's own evidence, could look at testimony from Progressive saying that's the right way to do it, and then could look at our expert testimony that shows that the PSA is invalid, could a jury reasonably fine for the named plaintiff in that instance? We submit that the answer is yes. Of course a jury could fine for the individual plaintiff in that case. So then the next question is, well, what if another class member brought an individual case? Could they use that same evidence? Could they also use the initial report? Could they also use Dr. Lacey's expert testimony? Could they also use Mr. Felix's expert testimony to present their own case? And we would submit that the answer to that would be yes, and a jury could reasonably fine in their favor. The whole point of the cost mechanism— But the PSA isn't the same for your first plaintiff and your second plaintiff. It's going to be a different number. That's correct, because— So has there been a breach of the contract? Let's assume you're right about the PSA, and the PSA should come out of the methodology. Is it your view that even if the plaintiff was paid the actual cash value without the PSA, that there was a breach of the contract? I'm trying to—so— So if the PSA is taken out of the methodology—  And the plaintiff still receives actual cash value or more, has there been a breach of the contract? If. Let me answer it this way. That should be a yes or a no. The answer is yes. How has there been a breach of contract if your client still gets the actual cash value, which is what the insurance contract says it will pay out? The evidence in this case is that they weren't paid ACB, but under this hypothetical—  Yeah, that's not the question. Because there is some evidence on the other side. I understand your expert says that. But if you're right, and this is the common question, and PSA comes out, and we just look at the formula without the PSA, for those plaintiffs in the class who still received actual cash value or more, was there a breach of contract? What the policy says is that ACB will be determined by market value, age, and condition. What the policy says is they will get actual cash value, and the actual cash value will be determined based on— by looking at market value and age and the condition. Right. And so to use an example that they've used before— If you could just answer the question yes or no. The answer is yes. If they do not determine actual cash value based on market value, age, and condition, that is a breach of contract. There might not be resulting damages. So, for instance, to use an example they've used, they could have a monkey throw a dart at the wall. Who imposes the duty on the progressive to use this specific methodology that you're advocating for or to not use this specific methodology? We don't claim that using Mitchell was a breach of contract. I understand, but you claim that including the PSA in there was. Because it's not. So what is the—this is a breach of contract. Indiana law does not specify any particular way to determine the actual cash value. They have some general law that says fair market value is the price at which property would change hands between a willing buyer and a seller. That's very general. So what imposes a duty on progressive not to include the PSA in the valuation? Because by including the PSA, they were not calculating actual cash value and they were not determining actual cash value based on market value, age, and condition. Progressive said we will determine actual cash value based on— For purposes of the breach. To answer the hypothetical, yes. If they, for instance, determined actual cash value by using a random number generator, that would be a breach of its contract. Now, if the random number generator came up with a million bucks, no one was damaged by that breach, but using a random number generator is not determining ACV based on market value. It's something else. Throwing darts at a wall is not determining actual cash value based on market value. The breach is a failure to pay actual cash value because that's what the contract promises. The breach is a failure to do what you promised to do in the contract. And so if they promised to determine— They just pay actual cash value. As determined by market value, age, and condition. Okay. Right? And so if they didn't do that, then that's a breach. But if they did do that, regardless of the PSA, let's say the PSA is out. Take that out. You win on that point. Okay. But if they paid actual cash value as determined by the other factors that are listed in the contract, then there's no breach. It's not a damages question. It's a liability question. There's no breach. If they did not do what the contract says that they will do, that would be a breach. But yes, sure. If after the PSA is removed, will they have defenses due process, right, to protect some defenses that may be individualized? Sure. They haven't identified any so far, but— I don't even think you have to get there. I don't even think you have to get to their defenses because if you are right, if you put on your case and they put on nothing, and your case taking out the PSA shows that they still got actual cash value, I don't see how there's liability for that. And that's the predominance problem, that this will have to be determined on an individual basis. To be clear, I was answering a hypothetical. The evidence in this case shows that if you remove the PSA, then what remains is the actual cash value. I think Mr. Cashton would dispute that. Oh, sure. Of course. They're not admitting we're right. They're going to put it on their case, too. And their case is that the PSA is correct. The evidence is in a court that everything about the valuation that Mitchell did was correct. No, I think they would say that even if the PSA is wrong, that members of the class, there are some members who still got paid actual cash value. And therefore, there's no breach. And their support for that is they pointed to NADA, right? Mr. Cashton pointed out that 35% of the time, the NADA guidebook value was higher than the Mitchell amount, right? Delano has addressed it. A lot of courts have addressed it. That is a common defense. In fact, Mr. Cashton said that for those 35% of the class members, there's no breach, right? Well, if a jury, let's assume for a second that that's even admissible evidence and it gets in front of the jury. If a jury were to agree, okay, then those 35% of the class members lose, right? That's still a common defense. It's just a common defense as to that subset of class members. Now, the problem with NADA is that it's a guidebook value and everyone agrees it's not market value, right? In fact, NADA itself says we're not giving you market value. We're giving you a guidebook value. So if they had used NADA in a hypothetical universe that doesn't exist, if they had used NADA, that would still be a breach, right? Because they could have defined ACB in their contract as guidebook value. We will pay actual cash value as determined by guidebook value. They could have done that. They didn't. They said market value instead, and everyone agrees that NADA isn't market value. So we don't think that evidence even gets in front of a jury, but if it does, it's still a common argument. Their argument is for these 35% of class members where NADA value is lower, there is no breach. If they're allowed to make that argument, they can, and then the jury will decide yes or no on that issue, and it will resolve it for those 35% of class members, but it's still not an individualized defense. The district court had to analyze the record in front of it, right? It had to analyze the arguments that was in front of it. The only argument that they made as far as individualized issues was this NADA defense. It was not an abuse of discretion for the district court to join with 12 other courts and agree that it is more likely than not that common issues will predominate here based on the record evidence that it was presented with. Unless the court has other specific questions, I will give back the remaining time to the court. You know, I have a small question, and it is this. Can you respond to the defendant's argument that Schroeder is not a proper class representative because her $600 PSA deduction was offset by the overpayments for storage fees and damages so that there is no injury to Schroeder specifically in about the two seconds you're going to have left? Can you address progressives' comparison to the Third Circuit's decision in Lewis, you know, holding the plaintiffs like standing to challenge a downward condition and adjustment where they ultimately avoid a financial injury because other upward adjustments more than offset the disputed adjustment? And as in Lewis, is there no injury to Schroeder alleged here because of those offsets? There's Article 3 standing here, Your Honor. And Lewis, what happened in Lewis was it addressed a condition adjustment to the vehicle and what the CCC in that case, GEICO, what they would do is they would do a flat condition adjustment, but then they would look at the vehicle and then sometimes adjust it back up if the vehicle was actually in good condition, which is what happened. So there was the initial reduction, but then that was offset because they essentially wiped it back out, and then the client negotiated $1,200 extra as part of the actual cash value of the vehicle. There's nothing like that here, right? There was no—the projected sold adjustment is always a downward adjustment, and there's never the offset that there was in Lewis. And so we believe that Article 3 standing is here. As for the storage fees and maybe they paid more in storage, that's a completely separate claim. It has nothing to do with the value of the vehicle. And so to the extent that they want to go after the plaintiff to recover some of their storage fees, if they think that they overpaid it, that's just a completely separate issue, a completely separate case. It has nothing to do with whether Plaintiff Schroeder has Article 3 standing. In this case, we would submit. I see that I'm out of time. Thank you, Your Honor. I could ask you briefly before you sit down about the Fifth Circuit's decision in Sampson and the Ninth Circuit's decision in Lara, which go against your position. I understand that the Ninth Circuit is kind of pointing in two different directions with the JAMA case. But there are the other court of appeals that have weighed in on this issue in this context, the predominance issue in insurance-related claims. There are cases against you, and the one case that is in your favor, the JAMA case, is undercut by its inconsistency with the Lara case from the same circuit. I would be reluctant to put a whole lot of weight on that, but take a crack at distinguishing the ones that go against you. What do you want me to start? You want me to start with Sampson and go to the Ninth Circuit? Sure. Let's do that. Okay, so the theory in Sampson was that there was a Louisiana regulation that basically said that required insurance companies, under the plaintiff's theory at least, to either use one of, I think there were six approved sources that they could use. Basically, Louisiana requires you to use guidebook value, whether it's NADA, KBB, Edmunds, and there was a couple others. And so what the plaintiff in that case was claiming was that progressive by using Mitchell, because Mitchell wasn't one of those six sources that you had to use, that it was a breach as incorporated into the contract. So, like Hartman, what did the plaintiffs want? They wanted Mitchell to be scrapped entirely and start over using one of the six sources. And what the Fifth Circuit said effectively was, okay, that's fine. Even if you're right, though, which of the six? And the plaintiff said, NADA. And the court said, why not one of the other five? And the plaintiff said, well, because. Just NADA. And the court said, no. There was a mismatch between their theory of liability and their theory of damages, because for their theory of liability, progressive was required to use one of six sources. But for their theory of damages, they were only allowed to use NADA. And the court said, that doesn't work. Even if you're right about the liability, that it was a breach to use Mitchell rather than use six sources, you can't then just randomly choose one of the six approved sources and say they can't use the other five, because you just told us that they could. And so there was a mismatch. That's not what we have here. We're not saying using Mitchell was a breach and you've got to start over and pick something else. We're saying, yeah, using Mitchell was great. In fact, we agree with Mitchell. Everyone agrees with Mitchell. It's just about this sole issue of the PSA. As for LARA, the challenge in LARA, so they didn't want to start over in LARA, right? But they were challenging a condition adjustment as being insufficiently disclosed. And what the Ninth Circuit correctly pointed out was something could be insufficiently disclosed but also correct. In other words, it's perfectly possible that USA looked at a condition of the vehicle, said this vehicle is in terrible condition. And so we're deducting $1,000. But then on their report, they just put in pen $1,000, insufficiently disclosed, right? What does that mean? But correct. And so the Ninth Circuit pointed out it's not enough just to say it's insufficiently disclosed. You also have to show that it was inaccurate. The plaintiff didn't present any evidence of that because the plaintiff didn't think that they had to do that. So they didn't try. And the Ninth Circuit correctly said, no, you can't just show that it was insufficiently disclosed. You actually have to show that it was wrong. We have evidence that it was wrong, which is why JAMA is not inconsistent with LARA, because the difference is in JAMA, they had evidence that it was not only insufficiently disclosed but was substantively wrong. And that's what we have here. We have evidence, and it's common evidence, upon which every class member could rely that the projected sold adjustment, the problem was not that it was insufficiently disclosed as in LARA. The problem was that it was substantively wrong. Thank you. Thank you, Your Honor. Mr. Kashtan. Judge St. Eve, I think it's peculiar that plaintiff had such a struggle answering your question. Let me give you two sources you can look at to maybe help. If you go to the plaintiff's appellate brief at page 21 at the bottom, they say, if plaintiff is wrong, if a jury or court finds progressive did pay ACV, her claims will fail on the merits. It's in their brief. The other place I would ask you to look is in the appendix at A17, which is the second amended complaint. There is a breach of contract claim. Count specifically says defendants failed to pay plaintiff and each of the class members the promised ACV of their total loss vehicles and thereby breached the contract with plaintiff. The theory that they're putting forth here, which they put forth in class certification, isn't in their complaint. The provision about defining it by market value, that section of the policy is not quoted in their complaint. It was something that they came up with, much like in Cartman, I think in an apparent effort to make their case more amenable to class certification, they came up with this theory attacking the methodology, the step. But what they have failed to do is come up with evidence showing actual cash value wasn't paid. You made a good point. We agree with it. That's their burden. And to show that, they would individually have to show that each plaintiff was paid or was not paid actual cash value. We think that there's a dearth of evidence in the record on that. But regardless, the issue isn't is there a common argument. The issue is, is the evidence on this predominantly common? Not their argument, the evidence. This would be highly individualized. For these reasons, we think the district court abused its discretion and we would ask the court to reverse the grant of class certification and remand this case for a trial on the individual. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.